UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| HOTARD COACHES,  INC., AND | * | CIVIL ACTION NO. |
| NEW HAMPSHIRE INSURANCE | * | 3:11-cv-00488-BAJ-CN |
| COMPANY | * | |
| | * | |
| VERSUS | * | JUDGE: BRIAN A. JACKSON |
| | * | |
| CATERPILLAR, INC. MOTOR COACH | * | MAGISTRATE JUDGE: |
| INDUSTRIES, AND THOMPSON | * | DOCIA L. DALBY |
| TRACTOR COMPANY, INC. | * | |
| | * | |

**Motor Coach Industries, Inc.'s Memorandum in Support of
Motion for Summary Judgment**

Motor Coach Industries ("MCI") sold a motor coach to Hotard Coaches, Inc. ("Hotard"). It was damaged following an engine compartment fire nearly two years later. Hotard and its insurer seek economic damages from multiple defendants, including MCI, under theories of strict liability, negligence, breach of warranty, and breach of warranty against redhibitory defects.

In the purchase agreement between MCI and Hotard, MCI disclaimed all implied warranties, including warranties of merchantability and fitness for a particular purpose. The agreement also contains an Illinois choice-of-law provision, the application of which bars Plaintiffs' warranty, redhibition, and tort claims against MCI. But even if Louisiana law governed Plaintiffs' claims against MCI, Plaintiffs waived all rights to recovery for redhibition and/or consequential and general damages, thus barring Plaintiffs' claims against MCI.

Accordingly, there is no genuine dispute as to any material fact, and MCI is entitled to judgment as a matter of law.

## Table of Contents

Introduction ............................................................................................................... 3

  A.  Background ........................................................................................................ 3

  B.  Plaintiffs' claims ............................................................................................... 4

  C.  Summary of the Argument ............................................................................... 4

Summary Judgment Evidence ................................................................................... 5

Argument ................................................................................................................... 5

  I.   Illinois law bars Plaintiffs' warranty, redhibition, and tort claims against MCI. ...... 5

    A.  MCI effectively disclaimed all warranties under Illinois law. .................... 5

    B.  Illinois law does not recognize redhibition. ................................................. 6

    C.  Under Illinois law, the economic loss doctrine bars Plaintiffs' tort claims against MCI. ............................................................................................................... 7

  II.   Louisiana law also bars Plaintiffs' claims against MCI. ......................................... 10

    A.  Plaintiffs waived their right to redhibition. .................................................. 11

    B.  Plaintiffs waived all rights to relief for general, economic or consequential damages. ............................................................................................................... 13

Governing Law ......................................................................................................... 14

  I.   Summary judgment .............................................................................................. 14

  II.   Illinois law governs the contractual issues in this case. ........................................ 14

    A.  Hotard and MCI selected Illinois law to govern all aspects of the contract. ...... 15

    B.  The public policies of all interested states support limited remedies and warranties; application of Illinois law would not violate those policies. ......................... 15

Conclusion ............................................................................................................... 20

**Introduction**

A.    **Background**

1.   On August 28, 2008, Hotard ordered three new motor coaches from MCI, including the subject D4505 motor coach (VIN 1M86DMFA48P058560) ("the Coach"), equipped with a Caterpillar CAT 410 hp Acert C13 engine.[1] MCI and Hotard signed an "Agreement to Purchase" (also referred to herein as the "Contract") (attached as Exhibit A), which established the terms of the purchase. The Contract was the result of an arm's-length transaction between sophisticated business entities.

2.   The Contract includes a limited (repair-or-replace-only) warranty for the Coach, and excludes every other warranty, remedy or cause of action with respect to the Coach, including any causes of action based upon strict liability or warranty, and expressly disclaimed any implied warranties.[2]

3.   Under the Contract's "**ADDITIONAL EXCLUSIONS/LIMITATIONS OF COVERAGE**" provisions, which specifically exclude liability or coverage for certain items, the Caterpillar engine is "Covered only by engine supplier, 24 months."[3] The Contract's "Coach Specification" section describes the engine supplier's (Caterpillar Product Services Corporation) warranty coverage for the engine.[4]

---

[1] Plaintiffs' Petition for Damages (Doc. 1-2) at 2 ¶ 5 (the Petition refers to the Coach as "Motor Coach 226."); Agreement to Purchase (also referred to herein as the "Contract"), attached as Exhibit "A," at 1; Coach Delivery Record, attached as Exhibit "B," at 1.
[2] *See* Exhibit A at 3-5 ¶¶ 12-14.
[3] *Id.* at 6, "EXHIBIT A" thereto.
[4] *See* Exhibit A at 9, § 4.3.68.2 ("Caterpillar Product Services Corporation Extended Service Plan Coverage ('ESC Plus') and Maintenance Components Package, for New On-Highway Engines, …is provided solely by Caterpillar Product Services Corporation and subject to terms and conditions, provisions and limitations set forth in the Caterpillar Product Services Corporation [ESC] Plus and

4.  MCI and Hotard agreed to apply Illinois law (excluding Illinois conflict-of-laws principles) to the construction and interpretation of the Contract.[5]

### B.    Plaintiffs' claims

Plaintiffs allege that on July 8, 2010, one day after service by Defendant Thompson Tractor, the Coach was damaged when a fire started in its rear and engine compartment.[6] They allege that previously, there were issues with the engine, including fuel in the oil, and engine vibrations when idling.[7] Plaintiffs seek economic damages from multiple defendants, including MCI, under theories of strict liability, negligence, breach of warranty, and breach of warranty against redhibitory defects.[8]

### C.    Summary of the Argument

Plaintiffs' causes of action against MCI are barred by (1) the contractual waivers that Hotard agreed to and (2) the rule forbidding tort recovery for pure economic losses. The parties agreed to Illinois law in their Contract. Under that law, Plaintiffs' warranty and redhibition claims are barred by contractual waivers of warranties. Additionally, the rule barring recovery of pure economic losses in tort bars Plaintiffs' products liability claim against MCI. Moreover, even if Louisiana law governed Plaintiffs' claims against MCI, Plaintiffs waived all rights to recovery for redhibition and/or general, economic, or consequential damages under Louisiana law.

Accordingly, there is no genuine dispute as to any material fact, and MCI is entitled to judgment as a matter of law on all of Plaintiffs' causes of action.

---

Maintenance Components Package Contract....MCI's obligation is limited to purchasing the coverage from Caterpillar Product Services Corporation on behalf of Buyer....")
[5] *See id.* at 5 ¶ 17.
[6] *See* Plaintiff's Petition at (Doc. 1-2)  2 ¶¶ 8-9, 3 ¶ 10.
[7] *See id.* at 4 ¶ 16.
[8] *See id.* at 3 ¶ 13, 4 ¶ 15; Plaintiffs' First Supplemental and Amended Petition (Doc. 16) at 2 ¶ 15. New Hampshire Insurance Company was the liability insurance carrier of Hotard.

---

<u>**Summary Judgment Evidence**</u>

In addition to the pleadings on file herein, MCI relies on the following Summary Judgment evidence:

> Exhibit A:    Agreement to Purchase
>
> Exhibit B:    Coach Delivery Record

<u>**Argument**</u>

**I.    Illinois law bars Plaintiffs' warranty, redhibition, and tort claims against MCI.**

Under Illinois law, Plaintiffs may not recover on any of their claims against MCI.[9] First, Plaintiffs' warranty claims are barred by the agreed-to contractual waiver of warranties. Second, Illinois law does not recognize redhibition claims. And third, Illinois law bars Plaintiffs' tort claims because they seek recovery for pure economic loss.

**A.    MCI effectively disclaimed all warranties under Illinois law.**

Under Illinois law, a seller can disclaim any and all implied warranties, including warranties of merchantability and fitness for a particular purpose. 810 Ill. Comp. Stat. § 5/2-316; *see R.O.W. Window Co v. Allmetal, Inc.*, 856 N.E.2d 55, 57-61 (Ill. App. Ct. 2006) (affirming trial court's dismissal of plaintiff's claims for breach of implied warranty of fitness and warranty of merchantability where defendants effectively disclaimed such warranties); *Carpenter v. Mobile World, Inc.*, 551 N.E.2d 724, 727-29 (Ill. App. Ct. 1990) (holding that plaintiff was not entitled to judgment on his breach of implied warranty counts because defendant effectively disclaimed any implied warranties). Here, MCI effectively excluded any and all implied warranties in the Contract.

_____

[9] *See infra* at 15-20 (section II of Governing Law).

---

The Contract contains a clear and conspicuous limitation of warranty; provides a specific, detailed limited warranty; and excludes all other warranties or causes of action related to the Coach.[10] Paragraph 13 of the Contract provides:

> **ENFORCEMENT OF THE FOREGOING OBLIGATIONS OF SELLER SHALL BE BUYER'S SOLE AND EXCLUSIVE REMEDY AGAINST SELLER WITH RESPECT TO THE COACH. THIS LIMITED WARRANTY AND SELLER'S OBLIGATIONS HEREUNDER ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT WILL SELLER BE LIABLE FOR ANY OTHER OBLIGATIONS OR LIABILITIES, INCLUDING LIABILITY FOR ANY GENERAL, SPECIFIC, DIRECT, INDIRECT, INCIDENTAL, PUNITIVE, ENHANCED, RELIANCE, OR CONSEQUENTIAL DAMAGES OF ANY KIND WHATSOEVER (INCLUDING, BUT NOT LIMITED TO, LOSS OF PROFITS AND LOSS OF USE) WITH RESPECT TO THE SALE OR USE OF THE COACH. . . .**[11]

Paragraph 12 likewise states—in bold, all-capital type—that enforcement of the limited warranty is Hotard's sole and exclusive remedy against MCI with respect to the Coach.[12]

The Contract's disclaimer of all implied warranties, including warranties of merchantability and fitness for a particular purpose, precludes Plaintiffs from bringing an action for breach of any implied warranties.

### B.    Illinois law does not recognize redhibition.

The parties agreed to apply Illinois law to the purchase agreement.[13] Illinois law does not recognize claims for redhibition; such a claim can only arise under Louisiana law. Redhibition arises out of contract and would only be available if the contract were governed by Louisiana law; and a waiver of warranties and limitation of remedies waives any claim for redhibition. *See*

---

[10] *See* Exhibit A at 3-5 ¶¶ 12-14.
[11] *Id.* at 4 ¶ 13 (emphasis in original).
[12] *See id.* at 3 ¶ 12.
[13] *See id.* at 5 ¶ 17.

*Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.,* 922 F.2d 220, 226-27 (5th Cir. 1991); *Scruggs v. Minton Equip. Co., Inc.*, 722 So. 2d 130, 132 (La. Ct. App. 1998). Because the applicable law does not recognize a redhibition cause of action, and Plaintiffs agreed to waive any right to redhibition by accepting the warranty disclaimer and limitations on remedies, they may not bring such an action in this case. *See Orthopedics & Sports Clinic*, 922 F.2d at 226-27; *In re Bridgestone/Firestone, Inc. Tires Prods.*, 155 F. Supp. 2d 1069, 1084-85 (D.S.D. 2001).

### C. Under Illinois law, the economic loss doctrine bars Plaintiffs' tort claims against MCI.

Plaintiffs' tort claims seek purely economic damages. The "Moorman Doctrine" precludes recovery in tort where damages are purely economic. *Moorman Mfg. Co v. Nat. Tank Co.*, 435 N.E.2d 443, 448-53 (Ill. 1982); *Mars, Inc. v. Heritage Builders of Effingham. Inc.*, 763 N.E.2d 428, 433-39 (Ill. App. Ct. 2002). The plaintiff in *Moorman* purchased a grain storage tank from the defendant manufacturer. After several years a crack developed in the side of the storage tank. *Morman*, 435 N.E.2d at 445. The plaintiff brought an action against the manufacturer, including claims for strict liability and negligence, and sought damages for the cost of repairs and loss of the use of the tank. *Id.* The Illinois Supreme Court clearly enunciated the rule that in cases where only "economic loss"[14] is allegedly sustained, the plaintiff is barred from recovery in tort. *Id.* at 450-51. The court also found that "[t]he policy considerations against

---

[14] According to the court, economic loss included "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits — without any claim of personal injury or damage to other property..." *Moorman*, 435 N.E.2d at 449 (citations omitted). Plaintiffs in this case may argue that personal injury did occur, but this alleged injury was to passengers. To bring a claim for economic losses in tort, the Plaintiffs must have suffered injury to themselves or their property and cannot attempt to evade the *Moorman* doctrine by asserting claims of injury to another. *See Vacuum Indus. Pollution, Inc. v. Union Oil Co. of California*, 764 F. Supp. 507, 513-14 (N.D. Ill. 1991).

---

allowing recovery for solely economic loss in strict liability cases apply to negligent actions as well." *Id*. at 451.

Similarly, in *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986), the United States Supreme Court considered whether a defendant is liable under tort where the damages to the product are economic. The plaintiffs, charterers of supertankers, brought suit against the manufacturer of turbine engines based on alleged design defects. *Id.* at 861. The plaintiffs sought damages for the cost of repairs and for lost income. *Id.* The defendants moved to dismiss the plaintiffs' tort claims based on the economic loss doctrine. *Id.* at 862.

The U.S. Supreme Court endorsed the approach adopted by the majority of state courts (such as Illinois) and held that a manufacturer in a commercial relationship has no duty under a negligence or strict liability theory to prevent a product from damaging itself. *Id.* at 871. Specifically, the Court found that "[d]amage to a product is most naturally understood as a warranty claim." *Id.* at 872. "Such damage means simply that the product has not met the customer's expectations, or, in other words, that the customer has received 'insufficient product value.'" *Id.* Thus, the Court barred the plaintiffs from recovering under tort based on the economic loss doctrine, finding that "[t]he maintenance of product value and quality is precisely the purpose of express and implied warranties." *Id.*

The Illinois Supreme Court's decision in *Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 682 N.E.2d 45 (Ill. 1997), is also instructive. In that case, the plaintiff was a common air carrier that purchased a commercial aircraft from the defendant manufacturer. *Id.* at 46. During a landing approach, a defect in the plane's engine ignited a fire that caused substantial damage to the engine and fuselage. *Id.* at 47. The defendant moved for summary judgment on the plaintiff's tort claims based on the economic loss doctrine. *Id.* The court held that there may be

no tort recovery under Illinois law for damage to a single product, even if the result of a sudden and calamitous event. *See id.* at 54-55.

Similar to the plaintiffs in *Moorman*, *East River* and *Trans States*—whose damages were limited to economic damages arising from damage to the product itself—Plaintiffs' alleged damages here are limited to economic damages. Thus, like in those cases, the economic loss doctrine bars Plaintiffs' tort claims.

Plaintiffs' pleadings also vaguely seek damages "for compensation to injured passengers" of the Coach. Thus, Plaintiffs may argue that their passengers' alleged damages take this case out of the *Moorman* doctrine, as the economic loss doctrine allows for tort recovery when other property is damaged. *See Vacuum Indus. Pollution, Inc. v. Union Oil Co. of California*, 764 F. Supp. 507, 513-14 (N.D. Ill. 1991). But the exception only applies if the other damaged property is the plaintiff's property. *See id.*; *Mars, Inc. v. Heritage Builders of Effingham, Inc.*, 763 N.E.2d 428, 466-67 (Ill. App. Ct. 2002). A plaintiff cannot turn the damage to another person or their property into a cause of action. *See Vacuum Indus. Pollution, Inc.*, 764 F. Supp. at 513-14; *Mars, Inc.*, 763 N.E.2d at 466-67.

*Vacuum Industrial Pollution, Inc. v. Union Oil Co. of California*, 764 F. Supp. 507 (N.D. Ill. 1991), illustrates this point well. It involved two fatalities and injuries that resulted from an oil tank clean-out after an explosion. *See id.* at 509-10. Vacuum Industrial also had a fifteen-foot section of hose destroyed in the accident. *See id.* at 510. Union Oil hired Vacuum Industrial to perform the clean-up and Union Oil allegedly failed to make the tank safe by not removing pipe to create a second exit, and in unsafely rushing the work. *See id.* Vacuum Industrial sued Union Oil under theories of negligence and breach of contract. Union Oil claimed that the *Moorman* doctrine barred the tort claims. *See id.* at 511, 512. The court agreed and dismissed the claims

despite injuries to the employees of Vacuum Industrial and the damage to its hose, its "other property." *Id.* at 513-14. The court held that the other-property exception requires more than "trivial" damages. *See id.* at 513. The court rejected any claims that Vacuum Industrial could sue for the harm to its employees, and recognized that those employees (or their estates) had already sued because their injuries were their own causes of action, and did not transform Vacuum Industrial's economic losses into a cognizable tort claim. *See id.* at 514.

Plaintiffs can only bring a recognized tort claim that is not barred by the *Moorman* rule by alleging damage to their own other property. *Moorman*, 435 N.E.2d at 450-51. Damage to the property of another does not turn Plaintiffs' economic-loss claims into recoverable tort damages. *Vacuum Indus. Pollution, Inc.*, 764 F. Supp. at 513-14; *Mars, Inc.*, 763 N.E.2d at 466-67. Any expenses Plaintiffs incurred in paying money to passengers based upon alleged personal injuries—undoubtedly in settlements expressly denying any fault by Hotard—are quintessential business expenses, incurred with business considerations in mind, and thus are pure economic losses unrecoverable in tort. Accordingly, Plaintiffs' tort claims against MCI are barred under Illinois law.

## II.     Louisiana law also bars Plaintiffs' claims against MCI.

In the alternative, even if Louisiana law were to govern Plaintiffs' claims against MCI, the Court should dismiss the claims because Plaintiffs waived all rights to recovery for redhibition and/or consequential and general damages. First, as noted above, Louisiana allows for a waiver of warranties and redhibition. Hotard waived those claims in the Contract by agreeing to exclude all warranties from MCI except MCI's express, limited warranty. This bars Plaintiffs' warranty and redhibition claims. Second, Plaintiffs specifically waived all rights to any recovery of "general, special, direct, indirect, incidental, punitive, enhanced, reliance or

consequential damages of any kind whatsoever (including, but not limited to, loss of profits and loss of use".[15]

A.    **Plaintiffs waived their right to redhibition.**

The contractual disclaimers and waivers of warranty bar Plaintiffs' warranty and redhibition claims under Louisiana law. The Civil Code of Louisiana allows for disclaimers of warranties, and  the Contract, though drafted with Illinois law in mind, also satisfies those requirements. Similarly, the agreement's waivers of warranty also waive any claims of redhibition. Therefore, Plaintiffs' warranty and redhibition claims should be dismissed.

To be effective, a contractual waiver-of-warranty provision must: (1) be written in clear and unambiguous terms; (2) be contained in the contract; and (3) either be brought to the attention of the buyer or explained to him." *Ross v. Premier Imports*, 704 So. 2d 17 (La. Ct. App. 1997) (citing *Prince v. Paretti Pontiac Co., Inc.*, 281 So. 2d 112 (La. 1973)); *see also Gulf Am. Indus. v. Airco Indus. Gases*, 573 So. 2d 481, 488 (La. Ct. App. 1990). In a deal between business entities, conspicuous typefaces on the lease evidencing the waiver are sufficient to call the purchaser's attention to the waiver and establish element three. *See Louisiana Nat. Leasing Corp. v. ADF Serv., Inc.*, 377 So. 2d 92, 96 (La. 1979). Similarly, clear conspicuous language— on its own—makes the purchaser aware of the waiver. *See Ross*, 704 So. 2d at 22. A contractual waiver of warranties can waive implied warranties and a clear and conspicuous waiver also bars recovery for redhibition. *See id. at* 21. A clear and unambiguous limitation of obligations can bar redhibition. *See id.*

*Anderson v. Bohn Ford, Inc.*, 291 So. 2d 786 (La. Ct. App. 1974), provides an example of waivers of both warranty and redhibition. It involved a car buyer seeking redhibition against the

---

[15] *See* Exhibit A at 3-5 ¶ 13.

dealer he bought the vehicle from and a third-party complaint from the dealer against Ford, the manufacturer. *See id.* at 787-87. The dealer failed to explain or show a waiver to the buyer, which meant that the dealer had not effectively disclaimed warranties and redhibition. *See id.* at 789. What is instructive in the court's written opinion is its analysis of the dispute between Ford and the dealer. Ford's sales contract with the dealer contained contrasting capital letters, which was clear and unambiguous. *See id.* at 790-91. Importantly, despite no evidence that Ford had pointed out the waiver to the dealer, the court found the third element had been established because "the dealer signed the document and acknowledged by his signature that he accepts the conditions contained in the agreement." *See id.* at 791. This signature, especially in a business contract, is enough to meet the notice requirements. *See id.* Accordingly, the court concluded that the dealer had agreed to a waiver of warranty, and that waiver also waived any claim for redhibition. *See id.*

Here, the contractual limitations and waivers of warranty bar Plaintiffs' claims for warranty and redhibition. As to the first element, the contract contains clear and unambiguous terms, printed in bold, all-capital type:

> **ENFORCEMENT OF THE FOREGOING OBLIGATIONS OF SELLER SHALL BE BUYER'S SOLE AND EXCLUSIVE REMEDY AGAINST SELLER WITH RESPECT TO THE COACH. THIS LIMITED WARRANTY AND SELLER'S OBLIGATIONS HEREUNDER ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATIOIN, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE...**[16]

The clear and unambiguous language of this clause waives all warranties other than the express limited warranty created in the contract, and also clearly limits MCI's obligation to that

---

[16] *See* Agreement to Purchase at 4 ¶ 13 (emphasis in original).

limited warranty.[17] Second, the Contract contains the terms of the waiver.[18] Third, the clear, contrasting typeface in this negotiated business deal between sophisticated entities negates any counterargument that Hotard was unaware of the terms it agreed to.[19] *See Louisiana Nat. Leasing Corp.*, 377 So. 2d at 96; *Ross*, 704 So. 2d at 22. Additionally, Hotard cannot claim it didn't know of the warranty terms and exclusions: Hotard's CEO signed his initials on every page of the contract—including the pages containing the warranty exclusions.[20] The limitation of obligations, also contained in the Contract, clearly limits MCI's obligation to Hotard to the limited repair-and-replace warranty, and excludes any action for redhibition. *See Ross*, 704 So. 2d at 21-22.

Accordingly, Hotard agreed to a waiver of all express and implied warranties in its contract besides MCI's limited repair-or-replace warranty, which bars Plaintiffs' warranty and redhibition claims against MCI under Louisiana law.[21]

### B.    Plaintiffs waived all rights to relief for general, economic or consequential damages.

Plaintiffs' recovery, if any, is confined solely to the limited warranty as noted above. Nevertheless, Plaintiffs have sued for consequential damages such as the loss of the Coach, compensation to injured passengers, and the loss of use of the Coach. However, as noted above, Plaintiffs specifically waived all rights to general, special, direct, indirect, incidental, punitive and/or consequential damages of any kind. Under Louisiana law, parties are generally free to

---

[17] *See* Agreement to Purchase at 3-5 ¶¶ 12-13.
[18] *See id.*
[19] *See id.*
[20] *See* Agreement to Purchase at 1, 3-5.
[21] The Fifth Circuit's recent *Wiltz v. Bayer Cropscience, L.P.* decision also resolves any ambiguities regarding the economic loss rule and makes it clear that Louisiana law follows that rule. *See* 645 F.3d 690, 699-703 (5th Cir. 2011). This rule bars any claims Plaintiffs hold that could conceivably survive the waivers Hotard agreed to as part of the structure of its business deal.

agree to their own contract terms and therefore a party may contract with another to exclude liability. *See Rhodes v. The Congregation of St. Francis*, 476 So.2d 461, 463 (La. Ct. App. 1985). Consequently, the limitation of damages is valid and binding against Plaintiffs. As a result, Plaintiffs' demands for damages are barred by application of the waiver provisions.

## Governing Law

### I.   Summary judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). While the non-moving party receives reasonable inferences in its favor, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Id.* at 398-99. The non-movant will gain the benefit of factual disputes, but only when the non-movant has actually submitted "evidence of contradictory facts." *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004).

"Furthermore, the party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "If the movant . . .meet[s] this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Id.* Courts may not assume that "the nonmoving party could or would prove the necessary facts." *Id.*

### II.   Illinois law governs the contractual issues in this case.

Before turning to the grounds for dismissal, a brief analysis of the applicable law is appropriate. In determining the applicable law, Louisiana federal courts sitting in diversity

jurisdiction look for a contractual directive, and if one is present, determine whether the contractual directive is binding.

A.      **Hotard and MCI selected Illinois law to govern all aspects of the contract.**

It is undisputed that the Contract contains a choice-of-law provision that unequivocally calls for Illinois law to govern the interpretation of the Contract and the remedies and defenses available to Hotard and MCI.[22] It is acceptable for contracting parties to make a choice of state law to govern the agreement between them. *Sentilles Optical Servs. v. Phillips*, 651 So. 2d 395, 398 (La. Ct. App. 1995). That choice will be given effect except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under La. C.C. art. 3537. *Id.* "All other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537." La. Civ. Code Ann. art. 3540. Choice-of-law provisions are presumptively valid, and the party contesting their validity bears the burden of proving invalidity. *Cont'l Eagle Corp. v. Tanner & Co. Ginning*, 663 So. 2d 204, 206 (La. Ct. App. 1995).

Thus, unless application of Hotard and MCI's choice of law would violate the public policy of any state with an interest in this litigation, the choice-of-law provision must be given effect.

B.      **The public policies of all interested states support limited remedies and warranties; application of Illinois law would not violate those policies.**

Illinois, Louisiana, and Texas have a potential interest in the application of their

---

[22] *See* Agreement to Purchase at 5 ¶ 17.

respective public policies in this litigation.[23]   The public policies of these states would not forbid

the application of  Illinois law to the warranty, cause-of-action, and damage waivers in this case.

Thus, this Court should recognize and uphold the Illinois choice-of-law provision.

In the absence of a contractual choice-of-law provision, a court would apply Article 3537

to determine the applicable law:

> Except as otherwise provided in this Title, an issue of conventional obligations is
> governed by the law of the state whose policies would be most seriously impaired
> if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant
> policies of the involved states in the light of: (1) the pertinent contacts of each
> state to the parties and the transaction, including the place of negotiation,
> formation, and performance of the contract, the location of the object of the
> contract, and the place of domicile, habitual residence, or business of the parties;
> (2) the nature, type, and purpose of the contract; and (3) the policies referred to in
> Article 3515, as well as the policies of facilitating the orderly planning of
> transactions, of promoting multistate commercial intercourse, and of protecting
> one party from undue imposition by the other.

La. Civ. Code Ann. art. 3537. Article 3515 lists the following policies that apply to analyzing

Article 3537: "(1) the relationship of each state to the parties and the dispute; and (2) the policies

and needs of the interstate and international systems, including the policies of upholding the

justified expectations of parties and of minimizing the adverse consequences that might follow

from subjecting a party to the law of more than one state." *Id.* art. 3515.

Proving a violation of a state's public policy is not easily done. Just because one state

forbids something does not mean that it violates the public policy of the state. *See Cherokee*

*Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246, 252 (5th Cir. 1994). Proving a public policy

violation requires more, and Louisiana courts "tend to uphold[] choice of law provisions in

contracts, particularly when such provisions are used in interstate transactions." *See id.* Even if a

---

[23] Texas has an interest in the outcome of this dispute because the Contract called for F.O.B. delivery
in Dallas, TX. Agreement to Purchase at 1.

provision in a contract does not comply with statutory requirements, such as a requirement of conspicuousness, this does not establish a public policy violation. *See id.* (citing *Delhomme Indus., Inc. v. Houston Beechcraft*, 669 F.2d 1049, 1058 (5th Cir. 1982)).

> **1.  There is no public policy conflict because all three states recognize the waiver of express warranties and the waiver of redhibition and implied warranties**

The contractual choice-of-law provision would not impair the public policy of any of the involved states. All three states approve of limitations of remedies under warranties and exclusion of implied warranties. And Louisiana—the only state to allow for redhibition—allows for its exclusion as well. *See Delhomme,* 669 F.2d at 1059-60.

The first contractual issue involves a waiver of all warranties, including implied, other than the parties' agreed-to repair-or-replace warranty. This waiver would also have the effect of eliminating a cause of action for redhibition, because Illinois law does not recognize redhibition; instead, Illinois allows for breach-of-implied warranty claims to provide the same protection for consumers. Because all three states allow for the exclusion of warranties or redhibition as appropriate to that state, the application of Illinois law under the parties' choice-of-law provision would not violate the public policies of any of the respective states.

First, Illinois allows for the exclusion of implied warranties in a contract. 810 Ill. Comp. Stat. § 5/2-316 (2011). Similarly, Illinois allows for the exclusion or modification of remedies in a warranty. *Id.* at § 5/2-719. Therefore, Illinois public policy would allow the exclusions and limitations in this contract.[24]

---

[24] Ultimately, whether the issues involved would violate Illinois law should make no difference to the resolution of the issues in this dispute. Article 3540 of the Louisiana Civil Code only prohibits the application of a contractual choice-of-law provision that violates the public policy of the state with the greatest interest in the dispute. Accordingly, if Illinois has the greatest interest in this dispute but its public policy is violated, its law would still be applied under the general principles of Article

Second, Texas allows manufacturers to limit and exclude implied warranties and the remedies for any warranties. *See* Tex. Bus. & Com. Code Ann. § 2.316, 2.719 (Vernon 2011); *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77, 82 (Tex. 1977). Accordingly, the limitations on remedies and exclusion of warranties in the contract between Hotard and MCI do not violate Texas public policy.

Third, Louisiana allows for waivers of warranties and redhibition. *Ross v. Premier Imports*, 704 So. 2d 17, 21-22 (1997). And it does not violate the public policy to enforce a waiver of warranties and redhibition. *See Cherokee Pump & Equip. Inc.*, 38 F.3d at 252 (citing *Delhomme Indus., Inc.* 669 F.2d at 1058)). Public policy is not violated even if the particular waiver does not comply with Louisiana requirements for an effective waiver, and the waiver would not be given effect under Louisiana law. *See id.* Consequently, the waivers in this case do not violate Louisiana public policy.[25]

**Accordingly, the public policies of all three states with a potential interest in this dispute support a waiver of implied warranties and redhibition, and the contractual choice-of-law provision should be given effect**.

Nor would any of the three potentially interested states bar the application of the rule disallowing tort recovery for pure economic loss.

**2.   Barring tort suits for pure economic loss does not violate public policy.**

Application of the economic loss doctrine likewise would not violate the public policies of any of the three potentially interested states and should be given effect.

---

3537. Therefore, Illinois law will be applied unless (1) Texas or Louisiana public policy is violated and (2) that state has the greatest interest in the dispute under Article 3537.

[25] Additionally, Louisiana public policy would certainly not be violated because Louisiana would give effect to the waivers at issue under its own law. *See infra* section V.A.

The economic loss doctrine bars recovery in tort for economic loss—including the loss of the product in question—without other harm. *E.g.*, *East River Steamship Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 859, 868-71 (1986); *Nobility Homes of Texas, Inc.*, 557 S.W.2d at 79-80. Here, recovery under a warranty and not in tort would be the appropriate remedy.[26] *Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 682 N.E.2d 45, 52 (Ill. 1997).

Illinois law enforces a bar against pure economic loss and disallows recovery for pure economic loss in tort. *Trans States Airlines*, 682 N.E.2d at 47-54; *Moorman Mfg. Co v. Nat. Tank Co.*, 435 N.E.2d 443, 448-53 (Ill. 1982). Accordingly, the pure economic loss doctrine would not violate Illinois public policy because the state's law authorizes and enforces this rule.

Texas also bars recovery for pure economic loss. *Mid Continent Aircraft Corp. v. Curry County Spraying Serv., Inc.*, 572 S.W.2d 308, 311-313 (Tex. 1978); *Nobility Homes of Texas, Inc.*, 557 S.W.2d at 79-80. Therefore, application of the bar against pure economic loss in tort would not violate Texas public policy.

Louisiana may follow the economic loss rule and certainly does not forbid it. The Civil Code does not bar the economic loss rule of other states; nor have Louisiana's courts. There is some indication that Louisiana may be willing to follow the doctrine. *See Gulf States Util. Co. v. NEI Peebles Elec. Prods., Inc.* 819 F. Supp. 538, 553 (M.D. La. 1993). Without a clear indication that the pure economic loss doctrine would violate Louisiana's public policy, the contractual choice-of-law provision, presumed valid, should be upheld. Accordingly, the economic loss doctrine does not violate Louisiana public policy.

---

[26] Hotard's choice to waive this remedy in the contract and bar itself from, ultimately, any remedy against MCI does not make a tort recovery appropriate. Parties to a contract may freely allocate the risks between themselves and that allocation of risks should be upheld by the courts. *See Mars, Inc. v. Heritage Builders of Effingham. Inc.*, 763 N.E.2d 428, 433 (Ill. App. Ct. 2002).

**Therefore, because Louisiana courts recognize choice-of-law provisions, and the choice-of-law provision here does not violate the public policy of any state with a potential interest in this litigation, Illinois law should apply and govern the analysis and validity of the waivers of warranty and damages and Plaintiffs' available theories of recovery.**

## <u>Conclusion</u>

Plaintiffs' claims against Motor Coach Industries, Inc. are barred by (1) a contractual warranty exclusion and (2) the well-established rule barring recovery in tort for pure economic losses. Moreover, even if Louisiana law governed Plaintiffs' claims against MCI, Plaintiffs waived all rights to recovery for redhibition and/or general, economic, or consequential damages under Louisiana law. Accordingly, there is no genuine dispute as to any material fact, and MCI is entitled to judgment as a matter of law on all of Plaintiffs' causes of action.

WHEREFORE, the premises considered, **MOTOR COACH INDUSTRIES, INC.** prays that its Motion for Summary Judgment be deemed good and sufficient, and for Judgment herein in favor of this Defendant against Plaintiffs:

(1)     dismissing all claims asserted by Plaintiffs against MCI with prejudice.

Respectfully submitted,

**PREIS & ROY**
(A Professional Law Corporation)

s/*Matthew S. Green*
_____
**EDWIN G. PREIS, JR. (#10703)**
**MATTHEW S. GREEN (#32148)**
**Preis & Roy**
102 Versailles Blvd., Suite 400
Post Office Drawer 94-C
Lafayette, Louisiana 70509
Telephone:     (337) 237-6062
Facsimile:     (337) 237-9129
Email:          EPreis@preisroy.com
Email:          MGreen@preisroy.com
**Counsel for Defendant**
**MOTOR COACH INDUSTRIES, INC.**

**OF COUNSEL:**
Darrell L. Barger
John C. Dacus
Pryce G. Tucker
**Hartline Dacus Barger Dreyer LLP**
6688 N. Central Expressway, Suite 1000
Dallas, Texas 75206
Telephone:     (214) 369-2100
Email:          dbarger@hdbdlaw.com
Email:          jdacus@hdbdlaw.com
Email:          ptucker@hdbdlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of November 2012, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system and all counsel of record have been provided a copy of same by operation of the Court's electronic filing system.

s/*Matthew S. Green*
MATTHEW S. GREEN