UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

HOTARD COACHES, INC., ET AL.                                CIVIL ACTION

VERSUS

CATERPILLAR, INC., ET AL.                        NO. 3:11-cv-00488-BAJ-RLB

## RULING AND ORDER

Hotard Coaches, Inc. and its insurance provider, New Hampshire Insurance Company (collectively, "Plaintiffs"), sued Motor Coach Industries ("MCI") and others seeking damages for a fire aboard a motor coach manufactured by MCI and purchased by Hotard.[1] (Doc. 1-2 at ¶¶ 2, 5, 9–13). Before the Court is MCI's **MOTION FOR SUMMARY JUDGMENT (Doc. 62)**, and the Plaintiffs' **CROSS MOTION FOR SUMMARY JUDGMENT (Doc. 66)**. The parties have each filed opposition and reply memoranda to the respective motions. (Docs. 65, 71, 76, 81, 93, 94). The Court has jurisdiction pursuant to 28 U.S.C. § 1332. Oral argument is not necessary.

I.  **Background**

The Plaintiffs are a busing company (Hotard)[2], and its insurance provider (New Hampshire Insurance Company). (Docs. 1-1; 1-2 at ¶¶ 3–4). MCI is a

---

[1] In addition to MCI, the Plaintiffs sued Caterpillar, Inc., the manufacturer of the engine in the tour bus, and Thompson Tractor Company ("Thompson"), a repair shop. (Doc. 1-1). By agreement between the parties, this Court dismissed Plaintiffs' claims against Caterpillar *only* on May 13, 2013. (Doc. 100). Plaintiffs' claims against Thompson remain pending.

[2] Hotard is a charter bus service corporation in Louisiana. (Doc. 1-1).

manufacturer and distributor of motor coaches.[3] (Doc. 1-2 at ¶ 15). This dispute arises out of a fire aboard a motor coach that Hotard purchased from MCI. (*Id.* at ¶¶ 9–13, 15).

The undisputed facts are as follows. On August 28, 2008, MCI sold Hotard three new motor coaches. (Docs. 62-3 at ¶ 1; 66-2 at ¶ 1). Under the terms of the sales contract, the parties agreed to a limited (repair or replace) warranty. (Docs. 62-3 at ¶ 2; 66-2 at ¶ 2). Among other things, this warranty stated, in bold print:

> ENFORCEMENT OF THE . . . OBLIGATIONS OF THE SELLER [UNDER THIS LIMITED WARRANTY] SHALL BE BUYER'S SOLE AND EXCLUSIVE REMEDY AGAINST SELLER WITH RESPECT TO THE COACH. THIS LIMITED WARRANTY AND SELLER'S OBLIGATIONS HEREUNDER ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT WILL SELLER BE LIABLE FOR ANY OTHER OBLIGATIONS OR LIABILITIES, INCLUDING LIABILITY FOR ANY GENERAL, SPECIAL, DIRECT, INDIRECT, INCIDENTAL, PUNITIVE, ENHANCED, RELIANCE, OR CONSEQUENTIAL DAMAGES OF ANY KIND WHATSOEVER (INCLUDING, BUT NOT LIMITED TO, LOSS OF PROFITS AND LOSS OF USE) WITH RESPECT TO THE SALE OR USE OF THIS COACH. NO PERSON IS AUTHORIZED TO CHANGE OR OTHERWISE MODIFY THIS LIMITED WARRANTY OR ASSUME ANY OTHER LIABILITY ON BEHALF OF SELLER UNLESS SUCH CHANGE, MODIFICATION OR ASSUMPTION IS MADE IN WRITING AND SIGNED BY AN OFFICER OF SELLER.

(Doc. 62-4 at ¶ 13).

The sales contract also provided, in bold print:

> BUYER HEREBY ACKNOWLEDGES THAT ENFORCEMENT OF SELLER'S LIMITED WARRANTY . . . SHALL BE BUYER'S SOLE AND EXCLUSIVE REMEDY AGAINST SELLER OR ANY OF ITS AFFILIATES WITH RESPECT TO THE COACH AND/OR ITS USE

---

[3] Motor Coach Industries (MCI) is a Delaware corporation with its principal place of business in Illinois. (Doc. 1-2 at ¶ C).

2

BY BUYER. BUYER FURTHER ACKNOWLEDGES AND AGREES THAT IN NO EVENT WILL SELLER OR ANY OF ITS AFFILIATES BE LIABLE FOR ANY GENERAL, SPECIAL, DIRECT, INDIRECT, INCIDENTAL, PUNITIVE, ENHANCED, RELIANCE, OR CONSEQUENTIAL DAMAGES OF ANY KIND WHATSOEVER (INCLUDING, BUT NOT LIMITED TO, LOSS OF PROFITS AND LOSS OF USE), WHETHER IN CONTRACT, WARRANTY, TORT, NEGLIGENCE, STRICT LIABILITY, BAILMENT, OR WHETHER STATUTORY, AT EQUITY, COMMON LAW, OR OTHERWISE.

(*Id.* at ¶ 12). The text of the contract excluded all other warranties or causes of action. (Docs. 62-3 at ¶ 3; 66-2 at ¶ 3).

Finally, the sales contract included a choice-of-law provision stating: "This Agreement shall be construed and interpreted in accordance with the laws of the State of Illinois, United States of America, without giving effect to that state's conflict of laws principles." Hotard's CEO initialed each page of the sales contract, and signed his name on page seven, indicating his approval of its terms. (*See generally* Doc 62-4).

On July 7, 2010, Defendant Thompson serviced one of the coaches that Hotard purchased from MCI ("Coach 226"), to address complaints of "fuel in the oil, and engine vibrations when idling." (Doc. 62-2 at pg. 4). The next day, Coach 226 caught fire on the return leg of Hotard's scheduled round-trip from Larose, Louisiana to Bay St. Louis, Mississippi. (*Id.*; Doc. 62-2 at ¶ 4). Passengers were not seriously injured, but the coach was damaged. (Docs. 1-2 at ¶ 12; 66-2 at ¶ 4). There is disagreement between the parties as to the cause of the fire, as well as the extent of the damage to Coach 226. (Docs. 66-1 at pg. 2; 71-1 at ¶ 4).

The Plaintiffs sued MCI, Thompson and Caterpillar in Louisiana state court on June 27, 2011, alleging that the Defendants were jointly and severally liable for damages caused by the fire. (Doc. 1-2). As to MCI, the Plaintiffs sought economic damages for "the total loss of Motor Coach 226 and indebtedness to various passengers for injuries they sustained" under the theories of negligence, products liability, and "breach[] [of] warranty that said Motor Coach was fit and proper for its intended use." (Doc. 1-2, ¶¶ 12–13, 15). The Plaintiffs were later allowed to amend their petition to "add claims for breach of warranty against redhibitory defects." (Doc. 16 at ¶ II).[4]

Based on diversity jurisdiction, and with the consent of the other Defendants, MCI removed the case to this Court on July 19, 2011. (Doc. 1). On August 1, MCI answered the Plaintiffs' complaint, raising a number of affirmative defenses. (Doc. 2). Among other things, MCI argued that the Plaintiffs' claims are barred "by reason of the terms and conditions of the agreement applicable to the sale of such goods, including the limitations of remedy and damages, and waivers and/or disclaimers of any implied warranties." (Doc. 2, p. 3). On October 24, MCI filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), (Doc. 24), which this Court treated as a motion for summary judgment, and denied without prejudice to allow time for additional discovery, (Doc. 36). In late 2012, the

---

[4] In their Amended Petition, the Plaintiffs also purported to add a claim for "breach of warranty of fitness for intended use" against MCI. (Doc. 16 at ¶ II). As indicated, the Plaintiffs had already made this claim in their Original Petition, (see Doc. 1-2 at ¶ 15), and thus the Plaintiffs' request was unnecessary. In any event, the resulting redundancy has no bearing on this Court's analysis.

4

Plaintiffs and MCI filed the cross motions for summary judgment that are the subject of this Order. (Docs. 62; 64).

II. **Standard of Review**

Summary judgment is appropriate after adequate time for discovery "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-movant must then come forward with specific facts, which establish a genuine issue for trial. Fed. R. Civ. P. 56(e). The Court views factual disputes in the light most favorable to the non-movant. However, a party cannot defeat summary judgment "by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation marks and citations omitted). Instead, the non-moving party must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quotation marks omitted). The Court's role at the summary judgment stage is "not to weigh the evidence or determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial." *Pylant v. Hartford Life & Acc. Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007).

In short, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

III. <u>Analysis</u>

In support of its motion, MCI argues that it is entitled to summary judgment because its sales contract with the Plaintiffs included: (1) express waivers that bar the Plaintiffs' causes of action; and (2) the Illinois choice-of-law provision which bars recovery under any theory of implied warranty or redhibition, and/or for purely economic loss. (Doc. 62-2 at 4–20). The Plaintiffs respond that summary judgment should not be granted to MCI because: (1) choice-of-law issues are beyond the scope of this Court's review at the summary judgment stage; (2) even if this Court may decide choice-of-law issues, Louisiana law controls because Louisiana's public policy would be impaired if Illinois law is applied; and (3) material facts remain in dispute. (Doc. 65 at 4–12).

In their cross-motion for summary judgment, Plaintiffs argue that they are entitled to judgment on their claims because it is beyond dispute that MCI breached the sales contract's express warranty by failing to repair or replace Coach 226. (Doc. 66-1 at pgs. 2–3).

A. **CHOICE-OF-LAW ANALYSIS IS NOT BEYOND THE PERMISSIBLE SCOPE OF SUMMARY JUDGMENT**

As a preliminary matter, the Plaintiffs' argument that "choice-of-law issues are not appropriate for a motion for summary judgment" is a nonstarter. (Doc 65, p.

6

7). The law in the Fifth Circuit is clear that district courts may evaluate and decide choice-of-law issues when considering dispositive motions. *See In Re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007); *Hartford Underwriters Ins. Co. v. Foundation Health Services Inc.*, 524 F.3d 588, 593 (5th Cir. 2008). Thus, MCI's motion is suitable for the Court's ruling.

### B. LOUISIANA PUBLIC POLICY DOES NOT FORBID THE APPLICATION OF ILLINOIS LAW TO THE CONTRACT

The Plaintiffs' next argument—that Louisiana public policy forbids application of the sales contract's choice-of-law provision—fares no better. (Doc. 65 at pp. 8–12). Under the Louisiana Civil Code, parties are free to choose the law that will apply to their agreement, as long as the applied law is in accord with Louisiana public policy. La. Civ. Code art. 3540.[5] "A choice-of-law provision in a contract is presumed valid until it is proved invalid." *Delhomme Indus., Inc. v. Houston Beechcraft, Inc.*, 669 F.2d 1049, 1058 (5th Cir. 1982). Further, "[t]he party who seeks to prove such a provision invalid because it violates public policy bears the burden of proof," which requires that party to establish "an express legislative or constitutional prohibition or a clear showing that the purpose of the contract contravenes good morals or public interest." *Id.* (quotation marks omitted). Finally, "[o]ne state's law does not violate another state's public policy merely because the laws of the two states differ." *Id.*

---

[5] This article states, "[a]ll other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537." La. Civ. Code art. 3540.

Here, the Plaintiffs argue that the sales contract's choice-of-law clause is invalid because application of Illinois law would result in a departure from Louisiana public policy. In support of their argument, the Plaintiffs assert that "[t]he citizens of [Louisiana] are at risk when unworthy and unsafe vehicles are placed on its roadways [and] any interest another state may have would be considered minor compared to Louisiana's interest in protecting those on its roads." (Doc. 65 at p. 11). Certainly Louisiana has an interest in ensuring that its citizens are not put at risk by unsafe vehicles traveling on it roads. However, the Plaintiffs have failed to produce evidence of "an express legislative or constitutional prohibition" indicating that where driver safety is concerned, the law of another state cannot control a commercial sales contract, *Delhomme Indus.*, 669 F.2d at 1058, nor have they otherwise produced sufficient evidence to make a "clear showing that the purpose of the [sales] contract contravenes good morals or public interest" because it follows Illinois law. *See id.* Indeed, the Plaintiffs are hard-pressed to make such showing, given the Fifth Circuit's recognition that it is *not* against Louisiana's law or public policy for parties to a commercial contract to adopt a different State's law with the effect of limiting or eliminating causes of action that would otherwise be available under Louisiana law. *Delhomme Indus.*, 669 F.2d at 1060 (determining that Kansas's "law on warranties and waiver of warranties" was not "oppressive, unfair, contrary to equity or good morals, or repugnant to Louisiana law or public policy" so as to render a contract's choice-of-law provision invalid (quotation marks omitted)); *cf. Cherokee Pump & Equip. Inc. v. Aurora*

*Pump*, 38 F.3d 246, 251–52 (5th Cir. 1994) (upholding a choice-of-law provision applying Illinois law regarding a party's right to terminate a contract despite differences between Louisiana law and Illinois law regarding whether notice and an opportunity to correct must be given before a contract can be terminated).

In sum the Plaintiffs are "commercially sophisticated parties" that freely agreed to an Illinois choice-of-law provision, (Doc. 62-4 at ¶ 17). *See Datamatic, Inc. v. Int'l Bus. Machines Corp.*, 795 F.2d 458, 465 (5th Cir. 1986). The Plaintiffs have failed to prove that Illinois law is so oppressive and disadvantageous that a Louisiana court would decline to apply it. *See Delhomme Indus.*, 669 F.2d at 1060; *Cherokee Pump*, 38 F.3d at 251–52. Thus, the Plaintiffs have not met their burden of showing that the sales contract's choice-of-law provision is invalid. *Delhomme Indus.*, 669 F.2d at 1060. Accordingly, Illinois law should be applied to all disputes between MCI and Plaintiffs.

### C. NO GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER THE PLAINTIFFS MAY RECOVER AGAINST MCI

MCI contends that Plaintiffs' claims are barred under Illinois law, which: (1) allows a seller to disclaim any and all implied warranties, including warranties of merchantability and fitness for a particular purpose, *see* 810 Ill. Comp. Stat. § 5/2-316 (allowing for disclaimer of implied warranties); *R.O.W. Window Co. v. Allmetal, Inc.*, 856 N.E. 2d 55, 57–61 (Ill. App. Ct. 2006); *Carpenter v. Mobile World, Inc.*, 551 N.E. 2d 724, 729 (Ill. App. Ct. 1990); *see also Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220, 226 (5th Cir. 1991) (holding that an agreement's waiver of "warranties, express or implied, including without limitation any

9

warranties of merchantability or fitness for a particular purpose" barred plaintiff's redhibition claim because "redhibition smacks of merchantability"); (2) does not recognize claims for redhibition, *see Young v. Ford Motor Co., Inc.*, 595 So. 2d 1123, 1127 (La. 1992) (indicating that "the redhibition action in Louisiana [descended from] Roman law"); and (3) bars tort claims seeking purely economic damages, *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E. 2d 443, 453 (Ill. 1982) (declining to extend "the tort theories of strict liability, negligence or innocent misrepresentation to cover solely economic losses").[6]

First, the Court finds that Illinois's economic loss rule is not a basis for dismissing the Plaintiffs' complaint because the Plaintiffs have established that they suffered more than just economic loss from the fire aboard Coach 226. Specifically, the Plaintiffs allege, and MCI does not dispute, that the fire caused damage to the coach. (Docs. 66-2 at ¶ 4; 71-1 at ¶ 4). Thus, because the Plaintiffs sustained property damage resulting from "a sudden, dangerous, or calamitous event," the economic loss rule does not bar recovery on their claims. *Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 682 N.E. 2d 45, 48 (Ill. 1997) (quotation marks omitted) (explaining that Illinois recognizes an exception to *Moorman*'s economic loss rule where the plaintiff sustains property damage resulting from a sudden or dangerous occurrence); *see also Wiltz v. Bayer CropScience, Ltd. P'ship*, 645 F.3d 690, 695 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 1145 (2012) ("In most

---

[6] The Plaintiffs do not respond to MCI's argument that their claims are barred by Illinois law, except to say that applying Illinois law to their claims "would be contrary to the public policies of [Louisiana]." (Doc 65 at p. 11; *see generally id.* at pp. 4–13). As explained, the Plaintiffs have failed to provide sufficient evidence to conclude that application of Illinois law to the sales contract is contrary to Louisiana's public policy.

jurisdictions, the 'economic-loss rule' bars recovery in tort when a party suffers economic loss unaccompanied by harm to his own person or property.").

The Court further finds, however, that under Illinois law, the sales contract's express, "conspicuous" terms bar the Plaintiffs' claims for recovery under an implied warranty of fitness for a particular purpose, and for redhibitory defects. 810 Ill. Comp. Stat. § 5/2-316; *R.O.W. Window Co.*, 856 N.E. 2d at 57–61; *Orthopedic & Sports Injury Clinic*, 922 F.2d at 226. The Plaintiffs' remaining claims against MCI—in negligence and products liability—are also barred by the sales contract's express waiver. (*See* Doc. 62-4 at ¶ 12 (waiving "ANY OTHER OBLIGATIONS OR LIABILITIES" other than those required by the contract's limited replace or repair warranty).[7]

In short, the Plaintiffs are sophisticated business entities that purchased motor coaches pursuant to a sales contract that clearly delineated that Illinois law governed its terms, and that any recovery against the seller (MCI) was limited to the terms of the express repair or replace warranty. Given the facts of this case, it is not the Court's discretion to excuse the Plaintiffs from their contractual obligations. *See Datamatic*, 795 F.2d at 465.

---

[7] For reasons explained, the Court rejects the Plaintiffs' argument that Illinois law should not control the interpretation of the sales contract, and further finds that under Illinois law, the Plaintiffs' claims against MCI are barred by the express terms of the sales contract. The result would be the same, however, even if Louisiana law applied, by operation of the sales contract's waiver provision, (Doc. 62-4 at ¶ 12). *See Rhodes v. Congregation of St. Francis De Sales Roman Catholic Church*, 476 So. 2d 461, 463 (La. Ct. App. 1985) ("A party may, under some circumstances, legally contract against liability for his own negligence or for a limitation on recoverable damages, but such an agreement must clearly indicate the intention of the parties."); *see also Datamatic*, 795 F.2d at 465 (stating that "Louisiana courts are more willing to find that [a] waiver was clear . . . unambiguous, [and binding]" where the buyer is a "sophisticated part[y]," the waiver was "conspicuous," and "the buyer's signature" is included on the contract).

### D. PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT IS BASED ON A CLAIM NOT PROPERLY BEFORE THE COURT

Plaintiffs argue in their cross motion for summary judgment that they should prevail because MCI "is in breach of the express repair or replace warranty included in the [sales contract]." (Doc. 66-1 at 1). However, as explained by the Magistrate Judge in his Order denying the Plaintiffs' request for leave to file a Second Amended Complaint, (Doc. 72), the Plaintiffs have not previously asserted a breach of express warranty claim against MCI, and, further, "have not met their burden in showing that good cause exists to grant [their] motion for leave to amend." (Doc. 101 at p. 6). Therefore, because (1) the Plaintiff's Original and Amending Petitions did not include a claim for breach of express warranty, (*see* Docs. 1-2; 16); and (2) the Plaintiffs cannot show cause for why, at this late stage, they should be allowed to add a claim for breach of express warranty, the Court cannot grant the relief Plaintiffs' seek on this basis. *Cf. Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").

### III. Conclusion

The undisputed facts of this case establish that the sales contract's choice-of-law provision does not contravene Louisiana's public policy. Therefore, Illinois law must be applied. Under Illinois law and the plain terms of the sales contract, the Plaintiffs are contractually barred from recovering damages from MCI based on

their stated claims. Further, the Plaintiffs' cross motion for summary judgment is based on a claim not properly before the Court.

For these reasons, the Plaintiffs' **CROSS MOTION FOR SUMMARY JUDGMENT (Doc. 66)** is **DENIED**. MCI's **MOTION FOR SUMMARY JUDGMENT (Doc. 62)** is hereby **GRANTED**, and Plaintiffs' claims against MCI are **DISMISSED WITH PREJUDICE**.

Baton Rouge, Louisiana, this 20th day of September 2013.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**